IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

DOCKET NO. 3:18CR292-RJC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **MONEY JUDGMENTS AND** |
| v. | ) | **PRELIMINARY ORDER OF** |
| | ) | **FORFEITURE** |
| (1) JACQUELINE DIANNE OKOMBA | ) | |
| (2) LAURENCE A. SESSUM | ) | |

THIS MATTER is before the Court on the United States of America's Motion, (Doc. No. 89), pursuant to Fed. R. Crim. P. 32.2(b), and 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), requesting that the Court enter the following judgments and orders:

(1) a $158,985.73 forfeiture Money Judgment against Defendant Okomba;

(2) a $1,548,491.28 forfeiture Money Judgment against Defendant Sessum; and

(3) a Preliminary Order of Forfeiture for:

- Any and all interest of Defendants in Direct Processing, LLC;

- Approximately $20,543.63 in funds seized from Direct Processing, LLC Wells Fargo Account XXXXXX2315 ("the Direct Processing Wells Fargo Account"); and

- Approximately $175,493.01 in funds seized from Direct Processing, LLC E*Trade Account *3827 ("the Direct Processing E*Trade Account") (collectively, "the Properties").

Defendant Sessum has filed an Objection (Doc. No. 91) contesting the money judgment calculation as to Sessum and the United States has filed a Reply (Doc. No. 92), disputing Defendant Sessum's Objection and clarifying a typographical error as to the amount of Money

1

Judgment sought. Defendant Okomba has not filed a response. As the Court indicated at sentencing, this Court will now resolve this matter via written order.

In summary, the United States contends that, based on the preponderance of the evidence as set forth in the record, Sections 981 and 982 mandate forfeiture of the Money Judgments and Properties. Upon review of the record, the Court agrees, hereby GRANTS the Motion, and FINDS AS FOLLOWS:

## I. BACKGROUND

As set forth in the Indictment (Doc. No. 3), trial and sentencing materials, and record in this case, from at least approximately 2014 through 2017, Defendants Okomba and Sessum operated a debt collection boiler room under the guise of, among other names, Direct Processing, LLC, defrauding individual victims of millions of dollars. In the Indictment, the Grand Jury found probable cause for forfeiture of a money judgment of "at least $3 million," approximately $175,493.01 in funds seized from the Direct Processing E*Trade Account, approximately $20,543.63 in funds seized from the Direct Processing Wells Fargo Account, and any and all interests in Direct Processing, LLC. Defendants elected trial by jury on the charges.

At trial the Court admitted exhibits on numerous accounts used and transactions conducted during the course of the conspiracy, including but not limited to testimony and exhibits that support the requested Money Judgments and specific property forfeitures. As a result of the trial evidence, the Jury returned a Verdict (Doc. No. 65) finding Defendant Okomba guilty of wire fraud conspiracy and obsruction of justice and a Verdict (Doc. No. 66) finding Defendant Sessum guilty of wire fraud conspiracy, wire fraud, money laundering conspiracy, and obstruction.

However, upon return of guilty Verdicts, Defendants did not elect to retain the Jury to determine forfeiture. Therefore, the issue of forfeiture is now appropriately before this Court.

## II. LEGAL CONCLUSIONS

### A. Overview of the law authorizing forfeiture

#### 1. Proceeds

Any person who is convicted of violating the conspiracy and fraud statutes at issue in this case shall forfeit to the United States any property which constitutes or is derived from proceeds traceable to such violations. 18 U.S.C. §§ 981(a)(1)(C); 28 U.S.C. § 2461(c). Courts use a nexus test to determine whether assets constitute or are derived from proceeds. *United States v. Farkas*, 474 Fed. Appx. 349, 359 (4th Cir. 2012), *citing*, *Libretti v. United States*, 516 U.S. 29 (1995) and *United States v. Cherry*, 330 F.3d 658, 669-70 (4th Cir. 2003). Courts use the "but for" test to determine whether there is a nexus between a crime and properties that the Government contends are proceeds. *Id.* at 359-60. "Pursuant to this test, [assets] are considered proceeds and therefore deemed forfeitable if 'a person would not have [the assets] but for the criminal offense.'" *Id.* (summarizing Seventh Circuit, D.C. Circuit, Second Circuit, and Eastern District of Virginia case-law and quoting the Western District of New York). "Strict tracing from a particular criminal act to a particular asset is not required if the totality of the circumstances establish that the asset constitutes or is derived from proceeds." *United States v. Guess*, 2015 WL 1208882, at *2 (W.D.N.C. March 17, 2015) (citing published and unpublished cases on the topic from the Sixth Circuit and the District of Maryland).

#### 2. Property Involved In Money Laundering

In addition, any person convicted of violating the money laundering laws shall forfeit any

property, real or personal, involved in such offense, or any property traceable to such property. 18 U.S.C. § 982(a)(1). Property "involved in" money laundering includes both the criminally derived proceeds and the legitimately obtained property commingled with the criminally derived proceeds in a money laundering transaction. *See United States v. Kivanc*, 714 F.3d 782, 794-95 (4th Cir. 2013) (civil forfeiture case involving concealment and transactional money laundering forfeiture under 18 U.S.C. § 981(a)(1)(A)). Property "involved in" money laundering may even include a business entity that facilitates a money laundering offense. *See In re 650 Fifth Ave. and Related Properties*, 777 F. Supp. 2d 529, 566-67 (S.D.N.Y. 2011) (in a lower court order that is one of many orders and opinions in long-standing and still pending litigation in SDNY and the Second Circuit, lower court denying motion to dismiss civil forfeiture complaint; collecting cases on forfeiture of business entities in the contexts of concealment and promotion).

### 3. Money Judgment

In addition, Fed. R. Crim. P. 32.2 and 21 U.S.C. § 853 support imposition of forfeiture money judgments in this case. Specifically, Fed. R. Crim. P. 32.2(b)(1)(A) authorizes a money judgment equivalent to proceeds of an offense. Further, substitute property of a defendant is subject to forfeiture under 21 U.S.C. § 853(p)(2) when, *inter alia*, property subject to forfeiture cannot be located or one of the other criteria in Section 853(p)(1) is met. The interplay of the Rule 32.2 money judgment provision with the substitute property law and Title 18 proceeds law applicable in this case is discussed more fully below.

### 4. Preponderance Burden of Proof

The Government's burden of proof on forfeiture is preponderance of the evidence. *Cherry*, 330 F.3d at 669; *United States v. Tanner*, 61 F.3d 231, 233 (4th Cir. 1995). The

Court's "determination may be based on evidence already in the record, including [ . . . ] any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B); *see also Farkas*, 474 Fed. Appx. at 360 (court may rely on trial record to determine forfeiture). The Government may satisfy the preponderance burden by both direct and circumstantial evidence. *United States v. St. Pierre*, 484 F.3d 75, 86 (1st Cir. 2007).

> **B. The record supports forfeiture of the $158,985.73 Money Judgment against Okomba and the $1,548,491.28 Money Judgment against Sessum.**
>
> **1. Legal Bases for the Money Judgments**

Fed. R. Crim. P. 32.2 and 21 U.S.C. § 853 support imposition of the requested forfeiture Money Judgments here. *See* Fed. R. Crim. P. 32.2; *see also* 21 U.S.C. § 853; *United States v. Chamberlain*, 868 F.3d 290, 296 (4th Cir. 2017) (in opinion disallowing pretrial restraint of substitute assets, discussing issuance of money judgments in Fourth Circuit), *citing*, *United States v. McHan*, 345 F.3d 262, 272 (4th Cir. 2003).

The Court's role is clear as Rule 32.2 provides in pertinent part as follows: "[i]f the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A); *see also United States v. Butler*, 578 Fed. Appx. 178, 182 (4th Cir. 2014) (district court must find nexus between forfeiture calculation and crime). In addition to Rule 32.2, the substitute property provisions of 21 U.S.C. § 853(p) provide additional support for imposition of a forfeiture money judgment. The substitute property provisions provide for forfeiture of property of a defendant up to the value of otherwise forfeitable property that cannot be found. 21 U.S.C. § 853(p); *see also Chamberlain*, 868 F.3d at 293-94. The substitute property provisions apply if, as a result of any

5

act or omission of a defendant, the *otherwise forfeitable property* cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty. 21 U.S.C. § 853(p)(1)-(2).

Here, as set forth above, proceeds of the fraud and conspiracy counts of conviction are subject to forfeiture and, as a result, a money judgment equivalent to that amount is also subject to forfeiture. Further, as set forth in its Motion, the Government has limited its money judgment request as to each Defendant to an amount equivalent to the proceeds that cannot be found and are attributable directly to each Defendant. And, as set forth in the Government's Reply to Defendant Sessum's Objection, the money judgment amounts are not limited to the amount of restitution claimed by the victims.

Specifically, in this case, the Government has limited its request to an extraordinarily conservative calculation of a money judgment amount equivalent to only **$158,985.73** attributable to Defendant Okomba and **$1,548,491.28** attributable to Defendant Sessum. In other words, the Government has not requested that this Court hold Defendants jointly and severally liable in forfeiture for the entire amount of conspiracy fraud proceeds, but, instead, only requested that this Court hold each Defendant liable for the withdrawals and transfers of funds attributable to each Defendant personally.

### 2. The Money Judgment Calculations

Ample trial testimony and exhibits support the Government's requests for a $158,985.73 Money Judgment against Okomba and a $1,548,491.28 Money Judgment against Sessum.

6

Specifically, as set forth in the exhibits and testimony, from January 2014 through January 2017, the conspirators used at least eight entities that maintained the following accounts to receive at least approximately **$6,171,189.66** (Trial Ex. 1) in victim funds:

- Bank of America Account 8981, held in the name of Direct Processing LLC, listing both Defendants as signatories (Trial Ex. 2);

- Wells Fargo Account 2315, held in the name of Direct Processing LLC, listing Defendant Okomba and Latoya R. Moore[1] (added April 17, 2015) as signatories (Trial Ex. 2a);

- Wells Fargo Account 5504, held in the name of Direct Processing LLC, listing Defendant Okomba and Latoya R. Moore as signatories (Trial Ex. 2b);

- Bank of America Account 2332, held in the name of Account Management Group LLC, listing Ashley Renea Knight as a signatory (Trial Ex. 3);

- Bank of America Account 3234, held in the name of Account Management Group LLC, listing Ashley Renea Knight as a signatory (Trial Ex. 3a);

- Bank of America Account 1777, held in the name of ADR Billing LLC, listing Darron Ray Taylor as a signatory (Trial Ex. 4);

- Bank of America Account 6083, held in the name of ADR Billing LLC, listing Darron Taylor as a signatory (Trial Ex. 4a);

- Bank of America Account 8361, held in the name of Compliance Remedy Solutions LLC, listing Crystal S. Cunningham as a signatory (Trial Ex. 5);

- Suntrust Account 9236, held in the name of Dialer Maintenance LLC, listing Laquoya Cathcart as a signatory (Trial Ex. 6);

- PNC Account 1944, held in the name of Standard Procedure Solutions LLC, listing Ebony Minter as a signatory (Trial Ex. 7);

- Suntrust Account 0385, held in the name of First Line Processing, listing Defendant Sessum and Cameron Leach as signatories (Trial Ex. 8);

- BB&T Account 0862, held in the name of First Line Processing, LLC, listing Cameron Leach as a signatory (Trial Ex. 9); and

- Citizens Bank Account 3448, held in the name of Priority Account Receivables, listing Angel Johnson as a signatory (Trial Ex. 11).

---

[1] All of the signatories listed herein were employees of one or more of the debt collection entities identified herein and/or relatives of Defendants.

Based on the information set forth in the trial exhibits on these entities and accounts, and *notwithstanding any other benefit* that Defendants Okomba and Sessum received from the accounts either via purchases others on their behalf, Okomba and Sessum benefitted, at a bare minimum, as follows.

Defendant Okomba obtained no less than **$158,985.73** in benefit from the fraud, as set forth in trial exhibits. Specifically, Okomba personally withdrew or transferred at least $107,586.31 from the accounts that received the fraud proceeds. The $107,586.31 is the sum of the following withdrawals and transfers, identified on Trial Exhibit 2A, specifically attributable to Okomba based on her role in the scheme as discussed at trial: $92,120.93 to Jackie Okomba; $10,232.38 to Genesis Finance; and $5,233 to Genesis Temp Service.[2] Further, according to an ADP payroll document (Trial Ex. 168) admitted at trial, Defendant Okomba received at least $51,399.42 in gross pay[3] by the end of the pay period ending December 11, 2015. The sum of the $107,586.31 in withdrawals and transfers and the $51,399.42 in gross pay results in a total of $158,985.73 in personally obtained proceeds.

As Defendant Sessum directed this fraud operation and controlled the businesses and bank accounts associated with each, Defendant Sessum obtained substantially more benefit. Specifically, the Government contends, and the Court agrees, that all other withdrawals and personal expenses totaling **$1,548,491.28**[4] are benefits attributable to him during the time period

---

[2] As reflected in the publicly filed North Carolina Secretary of State documents affixed to the Government's Motion, Okomba apparently controlled one or more "Genesis" entities.

[3] The Government advises that it is aware of other pay received by Okomba, but, in the interest of simplicity, submits this request solely based on the trial record to-date.

[4] The $1,548,491.28 amount is calculated based on withdrawals, including withdrawals by Latoya Moore, and personal expenses. Since these withdrawals and personal expenses are drawn on multiple accounts and identified in multiple trial exhibits, the Government has

of the offenses.

Under such circumstances, based on the record, and based on 18 U.S.C. §§ 981(a)(1)(C), the substitute property provisions of 21 U.S.C. § 853(p), and Rule 32.2(b)(1)(A), this Court shall issue a Money Judgment for the fraud proceeds attributable to each Defendant. *See United States v. Blackman*, 746 F.3d 137, 143-44 (4th Cir. 2014) (discussing that fact "that defendant is indigent or otherwise lacks adequate assets to satisfy a judgment does not operate to frustrate entry of a forfeiture order" since forfeiture is calculated based on total proceeds of crime, not percentage remaining in defendant's possession).

### C. The record supports a finding of a nexus between the specific business entity and funds, and the crimes of conviction.

The record also establishes the nexus between the Properties and the offenses of conviction. Specifically, the record establishes as follows:

- **Direct Processing, LLC**: Direct Processing existed as a result of the fraud and fraud proceeds formed the primary, if not only, source of funding for Direct Processing. Further, Defendants used accounts of Direct Processing to engage in money laundering—the same laundering of which Defendant Sessum was convicted. Thus, based on the law set forth above—including but not limited to Rule 32.2 and Sections 981 and 982—the preponderance of the evidence establishes that Direct Processing constitutes fraud proceeds, property used or intended to be used to facilitate or promote the fraud, and property involved in money laundering;

- **Approximately $20,543.63 in funds seized from Direct Processing, LLC Wells Fargo Account XXXXXX2315:** In and around August 2015 and August 2016, based on Seizure Warrants and Affidavits (WDNC Case Nos. 3:15MJ281 and 3:16MJ325), law enforcement seized these

---

specified the withdrawals, accounts, and pertinent Trial Exhibits in Exhibit B affixed to the Government's Motion. The Government has attributed these amounts to Sessum since Sessum apparently controlled the funds in the scheme and used others to withdraw money. The Government has not included transactions in regard to the Direct Processing E*Trade Account in the Okomba calculation set forth above or the Sessum calculation set forth in Exhibit B.

funds from the Direct Processing Wells Fargo Account. The Seizure Warrant record, trial record (*see, e.g.,* Trial Ex. 2a), and information in this case establish that this account received a substantial amount of fraud proceeds. Thus, based on the law set forth above—including but not limited to Rule 32.2 and Section 981—the preponderance of the evidence establishes that these funds constitute fraud proceeds; and

- **Approximately $175,493.01 in funds seized from the Direct Processing E*Trade Account:** In and around August 2015, based on a Seizure Warrant and Affidavit (WDNC Case No. 3:15MJ282), law enforcement seized these funds from the Direct Processing E*Trade Account. The Seizure Warrant record, trial record (*see, e.g.,* Trial Ex. 12, 2a), and information in this case establish that this account received transfers of fraud proceeds well in excess of $10,000 per transfer from the Direct Processing Wells Fargo Account. The sole signatory on the Direct Processing E*Trade Account was Defendant Okomba. Thus, based on the law set forth above—including but not limited to Rule 32.2 and Sections 981 and 982—the preponderance of the evidence establishes that these funds constitute fraud proceeds and property involved in money laundering conspiracy and in illegal monetary transactions.

Accordingly, this Court shall order the Properties subject to forfeiture.

### III. CONCLUSION

**WHEREFORE**, based on the aforementioned record whereby the Government has established, by a preponderance of the evidence, both the bases for the Money Judgment amounts and a nexus between the Properties and the counts of conviction, the Government's Motion is **GRANTED**, the following property is ordered forfeited pursuant to Fed. R. Crim. P. 32.2, and the Government is authorized to take and maintain custody of the specific Properties for forfeiture:

      (3) a $158,985.73 forfeiture Money Judgment against Defendant Okomba;

      (4) a $1,548,491.28 forfeiture Money Judgment against Defendant Sessum; and

      (3) a Preliminary Order of Forfeiture for:

- Any and all interest of Defendants in Direct Processing, LLC;
- Approximately $20,543.63 in funds seized from Direct Processing, LLC Wells Fargo Account XXXXXX2315; and
- Approximately $175,493.01 in funds seized from Direct Processing, LLC E*Trade Account *3827.

Pursuant to 21 U.S.C. § 853(n)(1), the Government shall publish notice of this order to the extent that the order pertains to the specific Properties; shall provide notice of its intent to dispose of the Properties in such manner as the Attorney General may direct; and shall provide notice that any person, other than the Defendants, having or claiming a legal interest in any of the above-listed Properties must file a petition with the Court within thirty days of the final publication of notice or of receipt of actual notice, whichever is earlier. This notice shall state that the petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the Properties, shall be signed by the petitioner under penalty of perjury, and shall set forth the nature and extent of the petitioner's right, title or interest in the forfeited Properties and any additional facts supporting the petitioner's claim and the relief sought. The United States may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in Properties that is the subject of this Order, as a substitute for published notice as to those persons so notified.

Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture as to the Properties. If no third parties timely file petitions, this Order shall become final by operation of law.

Signed: December 30, 2019

Robert J. Conrad, Jr.
United States District Judge